ROBERT J. DEAN and Another, Respondents, *v.* MARSHALL S. DRIGGS, Defendant.

EDWARD S. HATCH, Appellant.

| 82  561 |
| 145a 595 |
| 82h   561 |
| 40 Mis¹413 |

*Motion for the substitution of attorneys — reference to ascertain the attorney's lien — appeal from an order fixing the amount thereof.*

Upon a motion for the substitution of attorneys in a pending action, a reference ordered to ascertain the amount of the attorney's lien, although in form a reference to hear and determine the matters of difference, is in fact one to take evidence and report to the court so that it may be enabled to fix the amount of the lien.

Upon an appeal from the order of the court fixing the amount of the lien the appellate court is at liberty to examine the record to determine what would be a fair and reasonable compensation to the attorney.

APPEAL by Edward S. Hatch from so much of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of February, 1893, as denies the motion of the appellant to modify the report of the referee by adding the sum of $3,000 to the amount found due the appellant.

*Thomas P. Wickes,* for the appellant.

*L. E. Warren,* for the plaintiff Robert J. Dean, respondent.

O'BRIEN, J.:

Upon a motion made for the substitution of attorneys, a reference was ordered to determine the amount of the attorney's lien in several proceedings in which the substitution was desired. The referee found the amount due to be $3,470.16. Upon the motion to confirm the report, the appellant asked the court to establish his lien at the sum of $6,470.16, instead of the amount found by the referee, such claim being made up of $500 in addition to the amount found due in the case of *Dean* v. *Driggs,* and of $2,500 for services in the *Matter of Marques.* The court refused to grant such increase, and it is on account of such refusal that this appeal is taken.

The first question presented is as to the right to $500 additional to the amount allowed by the referee in the case of *Dean* v. *Driggs.* This was an action to recover the sum of $3,500 and interest, and was first tried in 1887, and the complaint was dismissed, but upon appeal to the General Term the judgment was reversed and a new trial granted. The second trial took place in June, 1888, when the plaintiff recovered judgment, from which an appeal was taken, which resulted in November, 1889, in the granting of a new trial. Subsequent to the second trial and prior to the argument of the appeal, and on January 28, 1889, the attorney and client had a settlement involving this action among several others, by the terms of which the attorney agreed to accept $1,200 in compensation for services in all matters prior to October, 1888, " exclusive of taxable costs and disbursements; which, however, are not to be charged except in the

event that a collection is made in any of the matters where costs have been awarded us, or either of us, and included in a judgment." After the argument of the second appeal Dean & Co. paid the attorney $250; and these two amounts of $1,200 and $250 the referee has found were in full of services to and including the second appeal, and that they are indebted to the attorney only for services rendered subsequent to the second appeal. The third trial resulted in a verdict in Dean's favor, which upon appeal was affirmed at the General Term, and was pending in the Court of Appeals when this motion for substitution was made. In his report the referee thus estimates the services subsequent to the second appeal.

"*24th.* That R. J. Dean & Company are indebted to said Edward S. Hatch for the services rendered in said action subsequent to the second appeal thereof only.

"*25th.* That the services rendered in said action after the second appeal up to the time of entry of the order of reference herein are reasonably worth the sum of nine hundred dollars, exclusive of taxable costs.

"*26th.* That the amount of the taxable costs in said action are six hundred and twenty-two and $\frac{79}{100}$ dollars.

"*27th.* That there is due and owing from Robert J. Dean & Company to Edward S. Hatch said sums of nine hundred dollars and six hundred and twenty-two and $\frac{79}{100}$ dollars, taxable costs in said action, in all the sum of one thousand five hundred and twenty-two and $\frac{79}{100}$ dollars."

It may be assumed, as claimed by the appellant, that the amount of costs connected with the suit up to and including the second appeal was $500, and such costs, by the agreement of the parties, were to go, if collected, to the attorney; and the contention of the appellant is that the referee, after deciding that $1,522.79 was a proper compensation for the third trial and the appeal therefrom, erroneously applied the sum of $500, the costs to which the attorney was entitled, as compensation for his prior services.

If the premise upon which this argument is based was correct, that the referee allowed for such services $1,522.79, then the conclusion would follow that in addition thereto the attorney was entitled to the taxable costs which, by the agreement between the parties, were reserved for the benefit of the attorney. We think, how-

ever, that this claim rests upon too slender a foundation. All this discussion would have been avoided if the referee had more clearly expressed himself in his findings; but an examination thereof will show that he had in mind the agreement entered into between the parties by which the costs were to go to the attorney, and that in fixing the value of the services he found that they were reasonably worth the sum of $900, and in addition thereto he found that the attorney was entitled to costs, which made up the amount to $1,522.79. Though not so explicitly stated, there can be no doubt that this was the intent and meaning of the referee when in his finding in regard to the value of such services he says they "are reasonably worth the sum of $900 exclusive of taxable costs." Apart, however, from such finding, this being in form a reference to hear and determine the matters of difference, but in fact one to take evidence and report to the court, so that it might be enabled, upon the motion for substitution, to fix the amount of the attorney's lien, we are at liberty, as we have done, to examine the record, as no doubt the court below did, to determine what would be fair and reasonable compensation to the attorney. Having in mind the fact that he has been paid for services up to and including the second appeal, we think that the sum of $900 was full compensation for the third trial of an action involving $3,500, in which, in addition to such amount, the attorney was awarded $622.79, a sum equal to the taxable costs upon the three trials.

The second claim is, that appellant is entitled to receive $2,500 in addition to what has been allowed him, for services in various matters classed together as the *Matter of Marques*. It appears that Marques, who had organized a corporation known as the American Package Company, in connection with a man named Gair, owed the attorney for services in relation thereto, and had also become indebted to Mr. Dean in the sum of over $7,000. In 1886 a dispute having arisen between Marques and Gair, the former desired proceedings taken with a view to realizing on the assets of the American Package Company. Such proceedings the attorney was disinclined to undertake upon the responsibility of Marques alone. At the same time Mr. Dean brought to the attorney his claim against Marques for collection, and as means of accomplishing the latter an arrangement was made, by which Marques assigned his

claims against the company to Dean as security for Dean's claim against him, and the attorney undertook the proceedings against the company. The question in dispute is, whether such proceedings were to be taken upon the retainer of Mr. Marques or solely upon the retainer of Mr. Dean, and under what arrangement or agreement the attorney proceeded.

In support of the view that it was solely upon the responsibility of Dean that the attorney proceeded, a letter written by Dean to Marques under date of January 27, 1886, was produced, which reads:

"FRIEND MARQUES :

"I have seen Mr. Hatch and he says he has had a talk with you, and told you that he would twist Gair out of his shoes and help you out, if I would guarantee him, and I have told him that I would. Now, I advise you to give him the matter entirely, for he knows all about the whole affair, and we will make Mr. Gair understand that he cannot do with us as he pleases before we get through with him. Now don't neglect this matter.   Do it at once.

"Yours truly,

"R. J. DEAN."

On the next day, what purports to be a memorandum of agreement between Dean and Marques was signed by Dean alone, which, after reciting the situation of the parties, purports to assign from Marques to Dean his stock, interest and claims in and to and connected with the American Package Company, as security for the payment of Dean's claims, in which instrument we find the following clause:

"2. That the party of the second part (Dean) will, as far as he considers to be reasonably safe and practicable for him so to do, without ultimate loss to himself, assist the party of the first part (Marques) in the furtherance of his interest in relation to the American Package Company, and with money necessary therefor, and particularly in securing the services of Edward S. Hatch to prosecute and defend said actions and proceedings."

No explanation of why Marques did not sign it is furnished, and whether or not it was a binding contract between the parties is left in doubt.   One thing is clear, that the paper, not being executed by

Marques, did not assign the latter's interest in the package company to Dean. However, from this period down to the date of this motion, it is conceded that the attorney performed various services in the *Matter of Marques*, which, by the finding of the referee, were reasonably worth $2,500. Considering that nothing was ever realized by Dean, we may say, in passing, we think this was a liberal allowance; but we agree with the appellant in the view that the question of amount is not involved. Were we to rely solely upon the letter and the agreement from which we have quoted, supplemented as these were by the attorney's evidence as to the agreement between himself and Dean, there would be much in his contention that he was acting solely upon the retainer of Dean, and that, under his agreement, he looked to him solely for payment. It will be noticed, however, that the letter was one written to Marques, and that the agreement relied upon was one purporting to be between Dean and Marques, but signed by Dean alone; and it is not claimed that there was any written request from Dean to the attorney. reliance being placed chiefly upon the fact that the letter and agreement were both placed in the possession of the attorney.

If we take the instrument called the agreement, upon which the appellant relies, and regard it as in some way binding on Dean, it will be noticed that it is rather indefinite as to just what responsibility Dean assumed. He states: "As far as he considers to be reasonably safe and practicable for him so to do, without ultimate loss to himself," he will assist Marques with money and in securing the services of the attorney. Just what this meant can be best inferred from the conduct of the parties themselves. Most of the services rendered to Marques were prior to the settlement between Dean and the attorney in January, 1889, and it is conceded that such settlement included all claims for services of every kind up to October, 1888, with certain exceptions referred to in the settlement, which need not be mentioned, because the Marques matters were not among them. This omission of any claim is significant when considered in connection with other facts appearing. Thus, a few days before the agreement of 1886, the attorney received from Marques a note for $500 as a retainer, upon condition, as he claimed, that Marques could obtain Mr. Dean's indorsement, by which he meant, not his indorsement to the note, but "to the engagement

that I should go on with Mr. Marques' matters." And when, for the first time after 1886, the bill for services in these matters as against Dean was presented in June, 1892, it was in the following words : " To services in *Dean* v. *Marques*, and services rendered to Moritz Marques on written request of Mr. Dean, and including note of Marques to Hatch in judgment, with other notes in favor of Dean against Marques, $500." And in the letter explaining this and other charges the attorney writes :

" In *Dean* against *Marques* this is a particularly hard one, though it is just. I should never, probably, have forced myself to a determination unless I was compelled to, as I am under the present circumstances. I would not proceed for Mr. Marques, after he had already run up a bill, which has not been paid, something like a thousand or more dollars, unless he paid me. In lieu of that he brought your communication that you would be responsible for the work. He adjusted it afterwards with me, and I compromised it, if I remember it correctly, for $500. That note, at your suggestion, when I stated I proposed to bring a suit upon it, was joined with your three notes and judgment entered in your favor on that note against Marques. We did a very great amount of work in this matter at different times for you. To the best of my recollection, we have not been actually paid for it, except so far as all claims would be included in the settlement I made with you, as of October 1, 1888, I do not think you allowed me anything in that matter, so it seems to me that if I charge you the amount of the note that is in your judgment and let everything else go, it might be termed just."

That the claim for services in the Marques matter was in some way compromised or adjusted between the parties, if ever really assumed by Dean, is evident from all the testimony, but just when and how does not so clearly appear. Thus we find that bills were rendered by the attorney to Dean for disbursements, and that Dean paid them, and yet the referee has found (and to such finding we take no exception) that the agreement was not that Dean was simply to pay disbursements. Whatever view the parties took of the so-called agreement, or whether it was compromised or adjusted, may never be ascertained, but the testimony furnished upon the reference clearly shows that neither the attorney nor the client thought there was any real or valid claim existing in 1892 ; for, in addition

to what has already been said, it is shown that in March, 1889, Mr. Dean wrote the attorney for a bill "for whatever was owing up to February, 1889," which bill was sent a few days after and paid. Now, as the principal part of the services rendered for which the claim is now made was prior to the settlement of October 1, 1888, it is remarkable that in none of these settlements between the parties was the claim made by the attorney against Dean, and the attorney admits that in none of his accounts against Dean did he charge up the Marques claim as against him; and in March we find the attorney writing to Dean to know if he had any objection to his accepting a retainer from Marques, which letter would never have been written if he had then thought he was at liberty to do any work that Marques wanted and charge it to Dean, whom he regarded as a responsible party.

Moreover, had the attorney stood upon the claim which he first made in 1892, and which upon his direct examination upon the reference he supported, of $500, his position would have been stronger than to attempt to increase this amount by $2,000. By such action the evidence is furnished that his feeling and anxiety to punish his former client were so strong that he was willing to convert what from his letter can be seen was regarded as a doubtful and a hard claim against Dean for $500 into one for $2,500. To summarize, then, upon the reference before the client was examined, it appeared, *first*, that the attorney claimed for services in these matters $500; *second*, that the principal part of the services rendered was prior to October 1, 1888, the date of the settlement between the parties; *third*, that he had never charged such a claim up against Dean in any of his books; *fourth*, that he had taken Marques' note for $500, which had been turned over to Dean, and that the amount of such note was the claim that he made against Dean for the services rendered to Marques. Although the attorney had rendered numerous bills for services from 1886 down to 1892, two of which involved a general statement for all services rendered by the attorney or his firm, excepting certain enumerated claims in which the Marques matters were not included—which bills had been paid, yet in none of these had any portion of the claim, such as is here made, for services ever been made or disclosed or suggested by the attorney to his client. We think, therefore, that,

having regard to the relation that existed between the parties, and noticing the particularity, and we might add the regularity, with which bills were furnished by the attorney, the facts we have alluded to are most significant, and justified the referee in refusing to allow the attorney any sum for services rendered in the matter of Marques.

We regard it as a subject of regret that the attorney did not himself adhere to the suggestion which, in his letter of June, he made to his client, namely, that instead of entering into harsh words or ill-feelings as to their matters of difference, they should be referred with a view of having them adjusted, his closing words being: " I should be satisfied with whatever the court awards me. I presume you would be too." The client having adopted this suggestion, and both having agreed on a referee of their own choosing, who seems to have given a patient hearing and investigation of the questions involved between them, and he having reached a conclusion that the rights of the parties should be adjusted by the payment by the client, in full settlement of all claims, of the sum of $3,470.16, and the client, in addition, being required to pay the expenses of the reference, amounting to $750, which, adopting the advice of his former attorney, he is prepared to do, we think that the attorney should be satisfied with the conclusion reached, which, upon all the testimony, we regard as fair and just, and upon payment of such amounts, should be required to give the consent for substitution.

The order appealed from accordingly should be affirmed, with ten dollars costs and disbursements.

VAN BRUNT, P. J., concurred.

Order affirmed, with ten dollars costs and disbursements.